UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

Dawna G.,

               Plaintiff,

   v.

Nancy A. Berryhill, Acting Commissioner of Social Security Operations,

               Defendant.

CASE NO. 3:18-cv-05380-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 5.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") did not err at Step Three of the sequential evaluation process. However, the Court concludes the ALJ erred when she failed to properly evaluate the opinion of Plaintiff's examining physician, Beth Liu, M.D. Had the ALJ properly considered Dr. Liu's opinion, the residual functional capacity ("RFC") may have included additional limitations. The ALJ's error is therefore harmful,

and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

In September 2014, Plaintiff filed applications for DIB and SSI, alleging disability as of July 15, 2013. *See* Dkt. 8, Administrative Record ("AR") 215-221, 222-228. The applications were denied upon initial administrative review and on reconsideration. *See* AR 97-165. A hearing was held before ALJ Kelly Wilson on December 22, 2016. *See* AR 50-96. In a decision dated January 10, 2017, the ALJ determined Plaintiff to be not disabled. *See* AR 12-41. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 6-11; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) improperly finding Plaintiff did not meet or equal Listing 1.02A at Step Three; (2) improperly evaluating the medical opinion and lay witness evidence; and (3) improperly assessing Plaintiff's RFC. Dkt. 10 at 1-17. Plaintiff argues this matter should be remanded for a new hearing directing the ALJ to reconsider the medical and vocational evidence. Dkt. 10 at 18.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**I. Whether the ALJ erred by finding Plaintiff did not meet or equal Listing 1.02A at Step Three.**

Plaintiff contends the ALJ erred by failing to find Plaintiff met Listing 1.02A at Step Three due to her obesity and inability to ambulate effectively. Dkt. 10.

At Step Three of the sequential evaluation process, the ALJ considers whether one or more of the claimant's impairments meets or equals an impairment listed in Appendix 1 to Subpart P of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). Each Listing sets forth the "symptoms, signs, and laboratory findings" which must be established in order for a claimant's impairment to meet the Listing. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If a claimant meets or equals a Listing, the claimant is considered disabled without further inquiry. *See* 20 C.F.R. § 416.920(d).

The burden of proof is on the claimant to establish she meets or equals any of the impairments in the Listings. *See Tackett*, 180 F.3d at 1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." *Id.* at 1100 (citing 20 C.F.R. § 404.1526). A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." *Id.*; *see also* Social Security Ruling ("SSR") 96–8p, 1996 WL 374184 *2 (a Step Three determination must be made on basis of medical factors alone). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83–19, 1983 WL 31248 *2. The ALJ "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant

presents evidence in an effort to establish equivalence." *Burch v. Barnhart,* 400 F.3d 676, 683 (9th Cir. 2005).

In considering Step Three, the ALJ found, although Plaintiff has severe physical impairments, the impairments "do not meet the criteria of any listed impairments described in the Listing of Impairments in Appendix 1 of the Regulations." AR 19. The ALJ stated,

> No treating or examining physician has reported clinical findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that were the same or equivalent to those of any listed impairment of the Listing of Impairments.

AR 19. In reaching her conclusion, the ALJ stated she specifically considered Listings 1.00 (musculoskeletal), 2.02 (loss of central visual acuity), 3.03 (asthma), 9.00 (endocrine), 11.14 (peripheral neuropathy). AR 19. The ALJ also considered Plaintiff's obesity alone and in combination with his other impairments and considered whether Plaintiff's mental impairments met or equaled a Listing. AR 19. Plaintiff asserts the ALJ did not properly consider her obesity or inability to ambulate, and based on these impairments she satisfied Listing 1.02 (major dysfunction of a joint). Dkt. 10.

Listing 1.02 is "[c]haracterized by [1.] gross anatomical deformity (*e.g.,* subluxation, contracture, bony or fibrous ankylosis, instability) [,][2.] chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and [3.] findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s) [,][w]ith ... [4.][i]nvolvement of one major peripheral weight-bearing joint (*i.e.,* hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in [section] 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.02.

Although Plaintiff does not have a dysfunction of a major peripheral weight-being joint, she alleges her condition meets Listing 1.02 because of her obesity and inability to ambulate

effectively. Dkt. 10. Regarding obesity, SSR 02-01p provides "[i]f the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b ... of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A…." SSR 02–01p. Section 1.00B2b provides the following description of what the Administration considers an inability to ambulate effectively:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.* [1]

---

[1] Defendant argues the inability to ambulate effectively means a person cannot walk " 'without the use of a hand-held assistive device(s) that limits the functioning of' " not just one, but " 'both upper extremities.' " Dkt. 11 at 2 (citing 20 C.F.R. pt. 404, subpt. P, App. 1, 1.00B2b(1)). And therefore, a person is unable to ambulate effectively if they cannot walk " 'without the use of a walker, two crutches or two canes.' " Dkt. 10 at 2 (citing 20 C.F.R. pt. 404, subpt. P, app. 1, 1.00B2b(2)). However, Administration has clarified the use of an assistive device(s) limiting functioning of both of a claimant's upper extremities is sufficient, but not necessary, to establish an inability to ambulate effectively according to paragraphs 1 and 2 of section 1.00B2b(2). Specifically, the Administration explained, "[w]e do not want to say that a claimant needs two hand-held assistive devices in order to exhibit inability to ambulate effectively .... The definition requires only that the claimant not be able to ambulate effectively and that effective ambulation would not occur if the only way an individual could get around would be with an assistive device that requires use of both upper extremities." *Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria,* 66 Fed. Reg. 58010, at 58027 (Nov. 19, 2001). The

1    Plaintiff contends there is evidence she walks with a cane and occasionally uses a walker.

2 Dkt. 10 at 6. Plaintiff argues "there was mention of being at the hearing with a cane[,]" which

3 Plaintiff testified was prescribed by Suzanne J. Fiala, M.D. Dkt. 10 at 6 (citing AR 69). Plaintiff

4 also argues she testified she used her cane all the time, even at home, and without it, she falls.

5 Dkt. 10 at 6 (citing AR 83). Plaintiff asserts she uses a walker when outside her trailer because

6 the ground is uneven. Dkt. 10 at 6 (citing AR 83). Plaintiff argues this evidence constitutes a

7 conclusion that she cannot ambulate effectively within the meaning of Section 1.00B2b, and

8 therefore, the ALJ should have found her condition equals Listing 1.02.

   The Court finds Plaintiff's argument is unpersuasive. Although Plaintiff testified she uses

10 a cane and walker, it is not clear from the record this resulted from Plaintiff's obesity. Moreover,

11 Plaintiff fails to cite to any medical evidence contained in the record showing her limited ability

12 to ambulate is at the level required by Section 1.00B2b, or she met her burden to present

13 sufficient objective medical evidence demonstrating showing her obesity or inability to ambulate

14 met or equaled Listing 1.02. For example, the record reflects Plaintiff has peripheral neuropathy

15 due to her diabetes, balance problems, and vertigo, but Plaintiff's use of any assistive devices

16 have been temporary and related to falling. AR 392-93 (Plaintiff diagnosed with vertigo and a

17 positive Romberg test, but presented with normal gait and posture and intact heel/toe walk.),

18 520-21 (In June 2015, Plaintiff was diagnosed with diabetes, diabetic peripheral neuropathy in

19 both feet, but reported she could ambulate without using a wheelchair, cane or crutches), 483,

20 638, 640, 679 (In August 2015, Plaintiff reported a fall, resulting in minor injuries to her left

---

Administration has further asserted "[t]he criteria [under Section 1.00B2b] do not require an individual to use an assistive device of any kind[,]" the "explanation[s] and examples should make it clear that [the section] applies to anyone who cannot walk adequately[,]" and "we recognize that individuals with extreme inability to ambulate do not necessarily use assistive devices." *Id.* 58027.

knee, including decreased balance and mobility. Plaintiff was provided with a knee immobilizer and crutches by emergency department and used a walker.), 535 (In June 2016, Plaintiff had difficulty with posture and gait, but no assistive device was noted.), 666 (In July 2016, Plaintiff had a fall and sustained minor injuries including soreness in her toes and a skinned knee. Plaintiff reported "pain is not so severe in her foot that she would like to do anything about it she just wanted to report.") (citations listed chronologically). And although Plaintiff testified Dr. Fiala prescribed a cane, Plaintiff fails to cite to any evidence in the record, and the Court is not aware of any, supporting this contention. *See* Dkt. 10; AR 433-444, 676-77, 687-690. Accordingly, Plaintiff's testimony related to her use of a cane and walker is not sufficient, standing alone, to compel a finding of inability to ambulate under Listing 1.02.

In sum, Plaintiff has not provided any evidence or explanation showing she meets or equals Listing 1.02, or any other Listing. Thus, Plaintiff has not shown the ALJ erred in finding Plaintiff's impairments did not meet or equal a Listing at Step Three. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (finding the ALJ did not err at Step Three when the plaintiff offered no theory, plausible or otherwise, as to how his impairments combined to equal a listed impairment or pointed to evidence showing his combined impairments equal a listed impairment); *Scott v. Colvin*, 2013 WL 1562009, *5-6 (W.D. Wash. March 20, 2013) (finding the plaintiff failed to show the ALJ erred at Step Three when the plaintiff did not proffer any plausible theory as to how his combined impairments equaled a listed impairment). The ALJ need not re-evaluate the Step Three finding on remand.

**II. Whether the ALJ erred in evaluating the medical opinion and lay witness evidence.**

Plaintiff argues the ALJ erred by failing to properly assess the opinions of Beth Liu, M.D., Norman Staley, M.D., Matthew Comrie, Psy.D., Loren McCollum, Ph.D., Brett Valette, Ph.D., Melissa Fogarty, MA, LMHC, Stephanie Hanson, Ph.D., and Teresa Blasor. Dkt. 10.

A.  <u>Examining physician, Dr. Lui</u>

Plaintiff alleges the ALJ erred when she assigned little weight to Dr. Lui's opinion. Dkt. 10 at 9-10.

On June 15, 2015, Dr. Liu performed a physical examination of Plaintiff. AR 519-524. Dr. Liu opined Plaintiff was limited to lifting or carrying up to 10 pounds occasionally, walking up to 40 minutes at one time without interruption and up to two hours total in an eight-hour work day, and standing up to 40 minutes at one time without interruption and up to two hours total in an eight-hour work day. AR 522. Dr. Liu opined Plaintiff had no limitations in her ability to sit and could occasionally reach overhead. AR 31. Dr. Liu opined Plaintiff should avoid climbing ladders or scaffolds due to hand and foot pain and right shoulder pain. AR 522.

The ALJ assigned little weight to Dr. Liu's opinion reasoning: (1) Dr. Liu stated her opinion is based "in part" on Plaintiff's subjective reports which were inconsistent with the record and (2) Dr. Liu's opinion was inconsistent with the longitudinal treatment record including Plaintiff's reports of daily activities including gardening and caregiving. AR 31.

An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial

evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

   1. *Plaintiff's subjective reports*

The ALJ assigned little weight to Dr. Liu's opinion reasoning it was based in part on Plaintiff's subjective reports which were inconsistent with the record. AR 31.

An ALJ may reject a physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)); *Andrews,* 53 F.3d at 1043 (An ALJ need not accept opinion evidence which is based on the claimant's discredited statements.). This situation is distinguishable from one in which the doctor provides his own observations in support of his assessments and opinions. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan*, 528 F.3d at 1199-1200).

Here, the record shows Dr. Liu performed a physical examination and reviewed Plaintiff's medical history and previous medical records including treatment notes with Plaintiff's providers, Dr. Fiala and Svetlana Vasilkiv, ARNP. AR 519-524. During the physical examination, Dr. Liu found Plaintiff had a decreased range of motion in her neck, left knee, right shoulder and bilateral wrists. AR 522-24. Dr. Liu found Plaintiff's neurological examination

showed slightly decreased sensation to pinprick in her bilateral feet. AR 522. While Dr. Liu noted she based her opinion *in part* on Plaintiff's account of her symptoms, Dr. Liu did not discredit Plaintiff's subjective reports, and also supported her opinion with a review of previous records, objective testing, and a physical examination. AR 519-524. As such, the Court finds Dr. Liu's opinion was not more heavily based on Plaintiff's subjective complaints and self-reports.

Next, the ALJ noted Dr. Liu's opinion was inconsistent with Plaintiff's reports elsewhere in the record. AR 31 (citing AR 391, 430, 526, 584, 676). An inconsistency between treatment records and an opinion serves as a valid reason to discount the opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, here, the ALJ fails to explain why or how this evidence contradicts Dr. Liu's opinion. *See* AR 31; *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (internal citation omitted). The ALJ did not elaborate on *which* of Plaintiff's reports or statements conflicted with *which* part of Dr. Liu's opinion. AR 21; *See Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014). Such conclusory reasoning constitutes an insufficient basis on which to give little weight to Dr. Liu's opinion. Therefore, the ALJ erred. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings[;]" conclusory reasons do "not achieve the level of specificity" required to justify an ALJ's rejection of an opinion); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on the ground it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

2. *Inconsistent with longitudinal record*

Next, the ALJ assigned little weight to Dr. Liu's opinion reasoning it was inconsistent with Plaintiff's reports of daily activities including gardening and caregiving. AR 31 (citing AR

526, 584, 676). The ALJ reasoned these activities were more strenuous than sedentary work. AR 31. A claimant's ability to engage in daily activities which are incompatible with the severity of symptoms described by a treating physician is an appropriate basis upon which to discredit the opinion. *Ghanim v. Colvin,* 763 F.3d 1154, 1162 (9th Cir. 2014); *see Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600–02 (9th Cir. 1999) (inconsistency between a treating physician's opinion and a claimant's daily activities a specific and legitimate reason to discount the treating physician's opinion); *Batson v. Comm'r Soc. Sec. Admin.,,* 359 F.3d 1190, 1196 (9th Cir. 2004).

First, in discussing Dr. Liu's opinion, the ALJ does not point to any details regarding Plaintiff's caregiving responsibilities or gardening. AR 31. Other than the conclusion these activities are more strenuous than sedentary work, the ALJ failed to provide a discussion explaining *how* Dr. Liu's opinion was contradicted by this evidence. AR 31. Again, this conclusory reasoning constitutes an insufficient basis on which to give little weight to Dr. Liu's opinion. *See Embrey*, 849 F.2d at 421-22; *Trevizo*, 871 F.3d at 676 (ALJ cannot not rely on a claimant's childcare responsibilities as substantial evidence of non-disability without "specific details" regarding the scope of responsibilities).

Moreover, based on the Court's review of the record and the treatment notes cited by the ALJ, Plaintiff's daily activities are not inconsistent with Dr. Liu's opinion. The record reflects Plaintiff cares for her husband's aunt including playing with her dogs, lifting, bathing, changing sheets, cooking and cleaning. AR 526, 584, 676. While the record reflects Plaintiff reported she is the "24/7 caregiver[,]" and is "worn out[,]" AR 676, none of the evidence cited to by the ALJ speaks to Plaintiff's ability to walk, stand, or carry a specific weight or perform at a consistent pace in a work environment. *see* 20 C.F.R. Pt. 404, Subpart P, Appendix 1, § 12.00 C(3) (A claimant's ability to function in a work environment should not be determined based on an

individual's ability to perform tasks in other settings which are less demanding, highly structured, or more supportive.); *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Moreover, none of the citations noted by the ALJ provide any details about Plaintiff's gardening. *See* AR 31 (citing AR 526, 584, 676).

The ALJ also failed to address significant reported limitations on Plaintiff's activities of daily living which are consistent with Dr. Liu's opinion. For example, at the hearing, Plaintiff testified there were four or five other family members who helped to care for her husband's aunt. AR 82. Plaintiff testified she only helped her husband's aunt for one and a half to two hours at a time and up to four hours per day. AR 82. Plaintiff also testified she can only sweep her aunt's kitchen for six or seven minutes before stopping to sit down. AR 82-83. Plaintiff testified she uses a cane around the farm where she lives as well as in her trailer. AR 83-84. Plaintiff testified if she doesn't use her cane, then she has to find support from furniture or else she will fall. AR 69. In sum, none of the activities performed by Plaintiff exceed the limitations described by Dr. Liu. Therefore, the Court concludes the ALJ's finding Dr. Liu's opinion is inconsistent with the longitudinal record, specifically Plaintiff's daily activities of caregiving and gardening, is not supported by substantial evidence.

In sum, after considering the record and the ALJ's findings, the ALJ has failed to provide a specific and legitimate reason, supported by substantial evidence, for giving little weight to Dr. Liu's opinion. Accordingly, the ALJ erred.

3. *Harmless error*

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v.*

*Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)). Furthermore, "the fact that the administrative law judge, had [she] considered the entire record, might have reached the same result does not prove that [her] failure to consider the evidence was harmless. Had [she] considered it carefully, [she] might well have reached a different conclusion." *Hollingsworth v. Colvin*, 2013 WL 3328609, *4 (W.D. Wash. July 1, 2013) (quoting *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)).

Had the ALJ properly considered Dr. Liu's opinion, the ALJ may have found Plaintiff disabled or included additional limitations in the RFC. For example, Dr. Liu opined Plaintiff was limited to standing and walking up to 40 minutes at a time for a maximum of two hours in an eight-hour workday. AR 522. These limitations were not accounted for in the RFC. *See* AR 21 (RFC limited Plaintiff to light work including standing/walking for no more than four hours per day at 45-minute intervals). If Dr. Liu's opinion as to Plaintiff's limitations were included in the RFC and in the hypothetical questions posed to the vocational expert, the ultimate disability determination may have changed. Therefore, the ALJ's error is not harmless. *See Molina*, 674 F.3d at 1115.

    B.  <u>Remaining medical opinion evidence and lay witness testimony</u>

Plaintiff also contends the ALJ improperly assigned great weight to the opinions of Dr. Staley, Dr. Comrie, Dr. McCollum, Dr. Hanson, Dr. Valette, Ms. Fogarty, and Ms. Blasor. Dkt. 10. The Court concludes the ALJ committed harmful error in assessing Dr. Liu's opinion and

this case must be remanded for further consideration. *See* Section II.A., *supra*. As this case must be remanded, the Court declines to consider whether the ALJ's consideration of the remaining medical opinion and lay witness testimony was erroneous. Rather, on remand, the ALJ should re-evaluate all of the medical opinion and lay witness evidence.

    **III.    Whether the ALJ erred in assessing Plaintiff's RFC and finding Plaintiff not disabled at Step Five.**

Plaintiff contends the ALJ also erred in assessing her RFC and finding her not disabled at Step Five of the sequential evaluation process. Dkt. 10. The Court concludes the ALJ committed harmful error when she failed to properly consider the opinions of Dr. Liu. *See* Section II.A, *supra*. The ALJ is directed to re-evaluate all of the medical opinion and lay witness evidence. *See* Section II, *supra.* The ALJ must therefore reassess the RFC on remand. *See* Social Security Ruling 96-8p ("The RFC assessment must always consider and address medical source opinions."); *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). As the ALJ must reassess Plaintiff's RFC on remand, the ALJ must also re-evaluate the findings at Step Five to determine if there are jobs existing in significant numbers in the national economy Plaintiff can perform in light of the new RFC. *See Watson v. Astrue*, 2010 WL 4269545, *5 (C.D. Cal. Oct. 22, 2010) (finding the ALJ's RFC determination and hypothetical questions posed to the vocational expert defective when the ALJ did not properly consider a doctor's findings).[2]

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ did not err at Step Three. However, the Court finds the ALJ erred when she failed to properly evaluate the opinion of

---

[2] As discussed above in Section I, *supra,* the Court finds no error in the ALJ's consideration of the Step Three finding, therefore, the ALJ need not re-evaluate this finding on remand.

Plaintiff's examining physician, Dr. Liu, and accordingly, the ALJ improperly concluded Plaintiff was not disabled. Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.[3]

Dated this 31st day of October, 2018.

David W. Christel
United States Magistrate Judge

---

[3] Plaintiff seeks remand for a new hearing and does not argue this case should be remanded for an award of benefits. Dkt. 10.